IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAHEED KELLY, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNIT MANAGER | : | No. 20-4413 |
| CONNOR-COUNCIL, *et al.* | : | |
|     Defendants. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                                    **March 20, 2023**

Shaheed Kelly sues three State Correctional Institution (SCI) Chester employees after the ventilation system on his cell block broke and remained inoperable for several months. He alleges they violated his Eighth Amendment rights and sought a declaratory judgment, injunctive relief, and $10,000 in damages from each defendant.[1] Defendants now move for summary judgment arguing, among other things, they did not violate Kelly's Eighth Amendment rights. The Court agrees, and therefore grants their motion for the reasons set forth herein.

**I.      BACKGROUND**

Kelly was an inmate at SCI Chester during the time relevant to his claims. (ECF 60-1, Kelly Dep., 8:6-7, 13-24.) He resided on the second floor of the prison in cell EB58 (or 2058) on cell block Echo Bravo. (*Id.* at 15:9-16:4.) Kelly's cell had a solid door with a covered cell window. (*Id.* at 14:8-15:8.) Hakeem Harris was his cellmate. (*Id.* at 8:4-12.)[2]

---

[1]     The Court placed his case on the prisoner civil rights panel following Kelly's request for counsel. No attorney volunteered to take his case, and Kelly proceeds pro se.

[2]     Harris and Kelly originally sued together, but the Court severed Harris's claims from this case (ECF 26, 27), and the Court ultimately dismissed Harris's claims without prejudice for failure

In or around September 2019, the ventilation system on Kelly's cell block broke. (*Id.* at 10:18-12:18, 16:5-12; *see also* ECF 60-6 (grievance dated November 18, 2019 indicating ventilation broke for "over a month and a half").) There was no air flow to Kelly's cell (neither heat nor air) causing his cell to be "too hot." (*Id.* at 13:13:16-14:3.) In total, the broken system affected Kelly and approximately fifty to one hundred other inmates. (*Id.* at 16:5-21.)

SCI Chester maintenance submitted a purchase order for three motors to "replace burnt out old motors for the ventilation system ASAP" on September 20, 2019. (ECF 60-5 at 1-2.) The required motors were backordered, delaying any repair. (ECF60-1, Kelly Dep., 19:3-7.) While the system was broken, Kelly asked Defendants Unit Manager Connor-Council and Captain Eason to move his cell because his asthma was negatively affected by the lack of ventilation, but neither did so. (*Id.* at 19:8-23:5.) Kelly also informed Defendant Maintenance Manager Selby[3] the ventilation was broken, and Selby informed Kelly fans would be placed on the cell block. (*Id.* at 23:18-24:8.) It took "like two months" to get fans. (*Id.* at 24:9-18.)

The ventilation issue affected Kelly's asthma.[4] (*Id.* at 46:17-23.) He was diagnosed with asthma as a child and takes two different inhalers to treat it. (*Id.* at 28:1-17; *see also* ECF 69 at

---

to prosecute. *See Harris v. Counsil et al.*, No. 21-1464, Docket No. 9.

[3]     Kelly named Maintenance Manager "Shelby" in his Amended Complaint but confirmed he intended to name Maintenance Manager Selby as the proper defendant. (ECF 60-1, Kelly Dep., 6:3-7.)

[4]     The Court acknowledges that Kelly alleges he had a mold issue in his cell in March 2019—months *before* the ventilation system stopped working in September 2019. (ECF 20 ¶¶ 28-34.) At his deposition, though, he maintained the broken ventilation system is what caused the mold to grow. (ECF 60-1, Kelly Dep., 46:24-49:14.) The Court cannot reconcile these inconsistent positions. Moreover, Kelly cannot have intended to plead the mold issue occurred in March 2020, because the system was fixed in or around January 2020, and Kelly left SCI Chester in February

2

29.) Heat and exercise trigger Kelly's asthma. (ECF 60-1, Kelly Dep., 38:911-16; *see also* ECF 69 at 28.) He needed to use one of his inhalers more than the usual twice per day during the ventilation issue. (ECF 60-1, Kelly Dep., 29:6-8.) While Kelly's asthma caused hospitalizations in the past, he did not need to be hospitalized during the ventilation outage. (*Id.* at 30:4-19.) He did, however, seek treatment from SCI Chester Medical during the ventilation outage for shortness of breath that he attributed to having dry air in his cell and an inability to breathe out of his nose. (*Id.* at 31:9-39:22; ECF 60-9, 60-10.) Nurse Brittany Greene treated Kelly on November 17, 2019, documenting: "Inmate reported to medical to retrieve his inhalers. NAD.[5] Inmate stated that he wasn't having a hard time breathing but that in his cell the air is dry and he started to have [shortness of breath] . . . lung sounds were clear." (ECF 60-9.) Physician Assistant John Nicholson treated Kelly on November 18, 2019 after Kelly complained of an "inability to breathe out of his nose." (ECF 60-10.) Nicholson noted Kelly had "allergic rhinitis" and prescribed him a nasal spray to help him breathe out of his nose. (ECF 60-10; *see also* ECF 60-1, Kelly Dep., 36:1-21.) Kelly still uses the nasal spray "to this day." ECF 60-1, Kelly Dep., 36:14-21.)

Around the same time as his medical visits, Kelly filed a grievance regarding the ventilation issue. (ECF 60-6) (grievance dated November 18, 2019). He complained the ventilation had been broken "for over a month and a half" and that he "suffer[s] from asthma, and that inadequate ventilation, or exposure to excessive heat, could and would cause [him] to suffer from asthmatic episodes." (*Id.*) He detailed three instances in November where he sought treatment for his asthma

---

2020. The Court cannot find the ventilation issue caused any mold on the existing record.

[5]   NAD is a medical abbreviation for "no appreciable disease; nothing abnormal detected." N.A.D., 586970, Stedman's Medical Dictionary (Westlaw, last updated Nov. 2014).

and explained he had "been suffering from shortness of breath, sleepless night's [sic], heat cramps, heat exhaustion" and "forced to deal with the cold with no ventilation." (*Id.* at 2; *see also* ECF 60-9, 60-10 (medical records confirming he sought treatment only two times in November 2019 for shortness of breath and inability to breathe out of nose, not three); ECF 60-8 (grievance appeal response listing medical visits).) He indicated he complained about the ventilation issue to Sergeant Book, C.O. Morgan, Sergeant Montanez, Superintendent Lamas, Deputy Eason, Major Davy, Sergeant Foster along with others. (ECF 60-6 at 2.) Selby responded to Kelly's grievance indicating the motor on the HVAC system needed to be replaced, but was on backorder, and would be installed once SCI Chester received it. (ECF 60 ¶ 4; ECF 60-7.) He also indicated the unit managers were advised they could request fans by submitting a work order. (ECF 60-6.) Kelly appealed Selby's decision to the Facility Manager who denied his requested relief and dismissed his appeal in January 2020. (ECF 60-8.) Kelly then appealed to the Chief Grievance Officer who again denied the appeal in June 2020. (ECF 60-11.)

SCI Chester eventually fixed the ventilation system "no more than one month" before February 2020, or approximately four to five months after it broke. (*Id.* at 12:29-13:4, 18:11-19:7.) Kelly was transferred to SCI Somerset in February 2020 after the ventilation system was fixed and is now housed at SCI Phoenix. (*Id.* at 8:13-24; ECF 67.)

## II.  LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury

4

to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). "Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, the burden on the moving party may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004) (citing *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) then *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotations omitted)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322–23).

### III.  ANALYSIS

Defendants now move for summary judgment arguing: (1) they did not violate Kelly's Eighth Amendment rights; (2) Defendants Connor-Council and Eason had no personal involvement in the purported violation; (3) Kelly failed to exhaust his administrative remedies as to Defendant Connor-Council because he did not name her in his grievance; and (4) in the alternative, all defendants are entitled to qualified immunity. (ECF 61). Kelly filed a "Motion for Summary Judgment" arguing "there is a genuine dispute of material fact" in this case, and he is entitled to judgment as a matter of law. (ECF 69 at 2.) Although styled as a motion seeking affirmative relief, the accompanying brief is titled "Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment," and it opposes Defendants' arguments, rather than presenting the Court with new ones. (ECF 69 at 3-11.) The Court therefore construes Kelly's filing as a response in opposition to Defendants' motion. The Court agrees, based on the on the record before it, Defendants did not violate Kelly's Eighth Amendment rights. The Court grants Defendants' motion for summary judgment.[6]

Section 1983 provides private citizens with a means to redress violations of federal law committed by state actors. 42 U.S.C. § 1983. To establish a claim under Section 1983, a plaintiff "must establish that [he] was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).

---

[6] As a threshold matter, Kelly's claims for declaratory and injunctive relief are moot because the ventilation system was fixed, he is no longer housed as SCI Chester, and there is no evidence he is likely to be subjected to the same condition again. *See Griffin v. Beard*, 401 F. App'x 715, 716 (3d Cir. 2010).

6

The Eighth Amendment "prohibits any punishment which violates civilized standards and concepts of humanity and decency." *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992). To show his conditions of confinement violate the Eighth Amendment, Kelly bears the burden of proving two requirements: "(1) the deprivation alleged must be, objectively, 'sufficiently serious,'" resulting in the "denial of 'the minimal civilized measure of life's necessities,'" and "(2) the 'prison official must have a sufficiently culpable state of mind.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) then *Wilson v. Seiter*, 501 U.S. 294, 299, 302-303 (1991) (cleaned up)); *McClure v. Haste*, 820 F. App'x 125, 128 (3d Cir. 2020). Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Fantone v. Herbik*, 528 F. App'x. 123, 127 (3d Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)).

To satisfy the first requirement, Kelly "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm," but he need not show actual injury. *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (internal quotations omitted)). "The proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm." *Id.* (quoting *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015)). "This is a totality-of-the circumstances analysis" and should consider the duration and severity of the unconstitutional conditions. *McClure*, 820 F. App'x at 128; *see also Erskine v. Mears*, 2022 WL 16921844, at *4 (D. Del. Nov. 14, 2022) ("The Eighth Amendment is concerned with both the 'severity' and the 'duration' of a prisoner's exposure to inadequate cooling and ventilation.")

Kelly's claim against Connor-Council, Eason, and Selby is based on his conditions of confinement while the ventilation system was inoperable for approximately four to five months in late 2019 and early 2020. His claim centers around his cell being too hot, too cold, and without adequate airflow. Kelly fails to produce evidence to establish he was incarcerated under conditions posing a substantial risk of serious harm during the ventilation outage, which he bears the burden of proving at trial, and summary judgment is warranted in Defendants' favor.

The record before the Court is scant, and the evidence supporting Kelly's conditions of confinement claim includes his own deposition testimony, medical records, and grievances.[7] At his deposition, Kelly testified "there was no working air flow at all. So, there was a problem with the heating, there was a problem with the air because there was nothing coming out of the vent. So my cell was too hot." (ECF 60-1, Kelly Dep., 13:13:16-14:3.) Although Kelly also testified the heat did not work, he never testified his cell was too cold during the outage, only too hot.[8] He also testified there was "no air circulation[,] [] no ventilation" or no "air flow" in his cell. Kelly visited medical twice during the ventilation outage and attributed his shortness of breath and his "inability to breathe out of his nose" to the dry air in his cell. While it is "well settled that exposing prisoners to extreme temperatures without adequate ventilation may violate the Eighth Amendment," (*Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013), the Eighth Amendment "does not mandate

---

[7] ECF 60-1 (Kelly Dep.); 60-9 (medical records); 60-10 (medical records); ECF 69 at 15, 21-23 (Defendants' statement of material facts citing to Kelly's deposition testimony and medical records highlighted by Plaintiff); 25-30 (medical records which Plaintiff highlighted).

[8] Even assuming he did testify his cell was too cold due to the ventilation issue, he did not testify, and there is no evidence, the prison failed to ameliorate the cold in some other way.

comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *see also Thomas*, 948 F.3d at 139 ("[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." (quoting *Rhodes*, 452 U.S. at 349)). The record does not contain any evidence of the temperatures from September 2019 to January 2020 nor does it have general evidence of the "severity" of the heat or cold during this time from Kelly (or his cellmate or other inmates on his cell block). The Court also lacks testimony from Kelly (or any other evidence) that the air quality in the cells was negatively impacted or inadequate due to the broken ventilation system. All the Court has to consider are Kelly's conclusions his cell was "too hot," lacked "air flow," and had "dry" air. This evidence is not sufficient to establish an Eighth Amendment claim because it fails to establish he was subjected to conditions posing a substantial risk of serious harm; rather, the record only establishes Kelly experienced uncomfortable prison conditions.[9] Defendants are entitled to summary judgment because Kelly fails to prove the objective element of his claim.[10] *Jones v. Sec'y Pa. Dep't of Corr.*,

---

[9] Plaintiffs may rely on their own sworn deposition testimony setting forth "specific facts" (even if when self-serving) to establish genuine issues of material fact sufficient to withstand summary judgment. (*See Paladino v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018); *see also Pinson v. United States*, 826 F. App'x 237, 243-44 (3d Cir. 2020); *Aruanno v. Maurice*, 790 F. App'x 431, 434 (3d Cir. 2019)). But here, Kelly's general, conclusory testimony about the conditions he experienced during the ventilation outage, even taken as true and construed in his favor, does not establish an Eighth Amendment violation.

[10] As to the second requirement, Kelly must show "that prison officials acted with deliberate indifference to the inmate's health or safety or conditions of confinement that violated the inmate's constitutional rights." *Id.* (quoting *Wilson*, 501 U.S. at 299, 302-03). The second element is subjective, and the "prison official must both know of and disregard an excessive risk to inmate health and safety." *Mammana*, 934 F.3d at 373. "In other words, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). Because Kelly fails at requirement one, the Court need not analyze the second requirement.

589 F. App'x 591, 593 (3d Cir. 2014) ("Jones's 'complete failure of proof' on the objective element of his claim entitled the defendants to summary judgment.").

## IV.     CONCLUSION

The Court grants Defendants' motion for summary judgment.

An Order consistent with this Memorandum will be docketed separately.